SMITH *v.* SMITH.

1. DAMAGES—VERDICT—EXCESSIVE AMOUNT—ASSAULT AND BATTERY —PAIN AND SUFFERING—NEW TRIAL.

A verdict of $10,500 damages for an assault and battery committed by a woman of seventy years of age upon plaintiff, a daughter-in-law, who was about thirty years of age, injuring the nerves of the plaintiff and causing some superficial injury which was not shown to be of a permanent and continuing character, was excessive and should be reduced to $5,500 by *remittitur* or a new trial granted, upon review of the order of the circuit court denying defendant's motion.

2. SAME—JURY—FEELINGS.

It was peculiarly a question for the jury what sum should be awarded to plaintiff for outraged feelings.

Error to Genesee; Wisner, J. Submitted January 8, 1915. (Docket No. 38.) Decided March 18, 1915.

Case by Grace Smith against Mary E. Smith for assault and battery and resulting injuries to plaintiff's person. Judgment for plaintiff. Defendant brings error. Reduced and affirmed.

*Brennan, Cook & Gundry* (*Harrison Geer,* of counsel), for appellant.

*Farley & Selby,* for appellee.

OSTRANDER, J.  One assignment of error is based upon an exception to a ruling admitting testimony. Upon the cross-examination of a witness, counsel for appellant had introduced a subject which, upon redirect examination of the witness, was pursued by counsel for the plaintiff.  I think he was bound to pursue it unless the whole matter was withdrawn, or the apparent purpose of the first inquiry disavowed, and that under the circumstances the court ruled correctly.

A portion of the charge is criticised, but no reasonable analysis of the instruction will show it to be inaccurate.  No amendment or amplification was asked for.

The single, serious question presented is whether the court below should have set aside the verdict and granted a new trial, as it was asked to do, upon the ground that the verdict is excessive.  The testimony for plaintiff tended to prove that on August 7, 1913, her mother-in-law, the defendant, entered her home and assaulted her, inflicting upon her person some apparently superficial injury.  Plaintiff was then 30 or 31 years old, the mother of two children, the younger about 11 weeks old.  Defendant was 70 years of age, and she gives a reason, an innocent one, for going into the house of her daughter-in-law, and relates circumstances, there occurring, provocative of the assault.  If testimony for plaintiff is believed, the reason given by the older woman for her presence there was a pretext merely for interfering with plaintiff's management of her elder child, the assault was unprovoked, and the defendant's conduct a gratuitous example and aggravated evidence of her attitude and feelings, from manifestations of which plaintiff had theretofore suffered.  Beyond this, the testimony of

plaintiff herself tends to prove that the effect upon her nervous system and general health was serious and continuing. The learned trial judge carefully instructed the jury that they should give nothing by way of punishment of defendant, but assess compensatory damages for pain, suffering, humiliation, and disgrace as they should determine that these elements had been proven. Upon a review of the matter, upon a motion for a new trial, he was of opinion that the verdict was not excessive, but was warranted by the weight of the evidence. His conclusion is not to be lightly overruled.

The medical testimony tends to prove that plaintiff has no organic trouble, but is "sensitive, physically and nervously delicate." Her condition, claimed to be a consequence of the assault, is described as neurasthenic, not threatening her life, but affecting her comfort.

"The symptoms were exhaustion, tired-out feeling, continually, and pains in different portions of her body, the limbs, back of the neck, quite a pronounced pain in the abdomen, and sleepless and restless nights. These were the principal symptoms. She also had a retarded appetite. * * *

"Q. Now, doctor, if Mrs. Smith was of a delicate, sensitive, nervous organization, and some time during the month of May last year she had given birth to a child, and then during the month of August following, about the 7th of August, her mother-in-law should come into her home and into her room and attack her and strike her in the face and scratch her face and arms, and that following that attack Mrs. Smith, the plaintiff, should suffer from nervous excitement and hysterical condition and from a pain in her head and back and easily excited after exertion, physical exertion, would you say that—what would you say as to a person of that kind of organization receiving a shock of that kind producing the condition that you have described, would it be possible for it to be done?

"A. I would say that the shock would bring on a condition of that kind, because she is of a make-up

that has not much reserve force, reserve vital force.

"*Q*. Now, would her suffering as the result of that shock to her nervous condition be real or imaginary?

"*A*. Yes, sir; it would be real.

"*Q*. Would it be just as real as it would be if there was an organic lesion or an organic trouble?

"*A*. Just exactly. Neurasthenia is a disease that sometimes takes a number of years to cure. It is possible that suffering from that source would be intense. The fact that plaintiff lives the next door to her mother-in-law and practically in the same yard might have a tendency, or would have a tendency, to keep this condition alive for the reason that it would have a mental effect upon her, and she not knowing what might happen at any time—it is one of the characteristics of neurasthenia to imagine that something is liable to happen at any time—and it would be so near her that it would be natural that it would have a tendency to keep the patient down.

"*Q*. Would it be possible, doctor, if that condition continues for a cure to be—an absolute cure to be effected in this case?

"*A*. It is not likely. A change of environment would have a beneficial effect. An institutional treatment is sometimes recommended. A neurasthenic condition affects the appetite and sleep, and it induces pains in the back of the head. A neurasthenic condition is more liable to produce a pain in the back of the head than in the front. * * * I was first consulted by Mrs. Smith on November 1, 1913. At that time I wrote her symptoms down in my book. They are drawing pains at the back and neck, excited feeling, very nervous, irritable, cannot fix her attention on anything without getting excited, does not sleep well, very depressed at times, sensations of pain especially at the back of the neck and abdomen, goes to the table feeling hungry and a very few mouthfuls of food fills her up. These were the symptoms I wrote down in my book on November 1, 1913. This is what she told me at that time. I did not write down her symptoms every time. I did not think it necessary to take them down later. I had treated her before this, but they were cash visits and no memoranda was made. She had been to see me several times prior to this and paid me each visit. I cannot fix the time

when she first came to me with this complaint. It was possibly a month or six weeks prior to this time. I could not say definitely, but think it was the latter part of September or first part of October. When she first came to see me, so far as I know, between the 9th day of August and the latter part of September, she had not consulted a physician at all."

I have set out so much of the testimony to show: *First*, that the medical opinions are based upon the disclosures of the plaintiff and the existence of symptoms which she describes; *second*, that the continuation of the conditions she describes is not necessarily permanent. No one gives the opinion it is more probable that they will continue than that they will abate. The compensation to be awarded her for outraged feelings is peculiarly a matter for the jury. The verdict was for $10,500. It is evident that, as the cause was tried, the case for the plaintiff, if believed, strongly appealed to the jury.

There is testimony, admitted without objection, which, if believed, supports the inference that the defendant had habitually treated plaintiff with contumely, subjected her to indignities, offended her in speech. While a verdict in such a case is not lightly to be set aside, or amended in amount, nor the opinion of the trial judge lightly overruled, I am impressed, after a careful reading of the record, that the jury, consciously, or unconsciously, made the assessment of damages to meet what was conceived to be the merits of the whole unpleasant relation which the testimony disclosed. Upon the jury's finding, plaintiff is entitled to a substantial recovery.

In my opinion, a new trial ought to have been granted unless plaintiff remitted $5,000 of her judgment. Such an order will be made, and appellant will, in any event, recover costs of this court.

BROOKE, C. J., and MCALVAY, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.